IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.  CRIMINAL NO. 3:26-CR-6-HTW-LGI

STEPHEN SPENCER PITTMAN

## MOTION TO REVOKE AND AMEND DETENTION ORDER

Pursuant to 18 U.S.C. § 3145(b), the defendant, Stephen Spencer Pittman, by counsel, moves the Court to review and revoke the detention order in this matter.

## PROCEDURAL BACKGROUND

A grand jury indicted Mr. Pittman for one count of arson in violation of 18 U.S.C. § 844(i). ECF 8. At arraignment, the government moved for detention on two grounds: (1) arson qualifies as a crime of violence under 18 U.S.C. § 3142(f)(1); and (2) that Mr. Pittman poses a serious risk to prospective witnesses under § 3142(f)(2)(B). ECF 19 (Audio recording of the detention hearing) at 18:56. The government conceded that this case does not involve a serious risk of flight. ECF 19 at 19:28.

Mr. Pittman, through counsel, objected to a detention hearing. He argued that arson does not categorically qualify as a crime of violence. ECF 19 at 8:31; *see also* ECF 10 (Motion for Bond) at 2–4. He also argued that the Government's proffer failed to establish that Mr. Pittman would threaten, injure, or intimidate any witnesses. ECF 19 at 11:45.

The Court held a detention hearing over Mr. Pittman's objection. ECF 19 at 26:10. The Court concluded that the Government's proffer showed that the case involved a serious risk that Mr. Pittman would obstruct justice, or threaten, injure, or intimidate a prospective witness under

§ 3142(f)(2)(B). ECF 19 at 25:36. The Court declined to make a ruling about whether arson is a crime of violence. ECF 19 at 25:59.

During the detention hearing, the Court admitted one exhibit and heard from one witness. The only exhibit was the pretrial services report, which the Court admitted under seal. ECF 19 at 26:50. The only witness was FBI Special Agent Ariel Williams. ECF 19 at 27:48.

Relevant here, Agent Williams testified about the evidence supporting the charge against Mr. Pittman, including that he had allegedly made anti-Semitic comments before the incident, ECF 19 at 34:50, that he allegedly confessed to the arson, ECF 19 at 35:33, and that he appeared to have burns to his ankles and hands on the day of the arson, ECF 19 at 31:04.

Agent Williams also talked about Mr. Pittman's relationship with his parents. She testified that "due to recent behaviors from the defendant," Mr. Pittman's father "was hesitant or afraid to contact law enforcement in front of the defendant." ECF 19 at 32:49. Some of these behaviors included "anti-Semitic statements" and "things that made [Mr. Pittman's parents] uncertain of how he would react." ECF 19 at 33:40.

Agent Williams testified that Mr. Pittman's mother expressed "a sense of relief" that Mr. Pittman was in custody. ECF 19 at 34:08. She testified that Mr. Pittman's mother believed that "the family pets were afraid of" him, and she and Mr. Pittman's father had considered "locking" "their bedroom doors at night due to the fear of [Mr. Pittman's] behavior." ECF 19 at 34:19.

Agent Williams could not identify any specific threats that Mr. Pittman made to his parents. ECF 19 at 39:48. She described one incident when Mr. Pittman allegedly "said something offensive to the mother. And when the father attempted to step in, … [Mr. Pittman] bowed up to him, as in he got up and jumped at him. And so he was fearful that he would react physically." ECF 19 at 40:00. Agent Williams admitted, though, that Mr. Pittman did not physically assault his

father at that time, and Mr. Pittman's father was able to diffuse the situation. ECF 19 at 40:20, 46:07.

Agent Williams also confirmed that though the FBI had interviewed Mr. Pittman's "associates," these individuals "did not directly say that they were in fear of" Mr. Pittman. ECF 19 at 43:03.

At the conclusion of the hearing, the Court entered an order of detention. The Court found that the government had proved, by clear and convincing evidence, that no conditions would reasonably assure the safety of others or of the community. The Court based its finding primarily on the nature and circumstances of the offense and the comments of Mr. Pittman's parents.

## **ARGUMENT**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The government has not and cannot meet its heavy burden to show that the defendant qualifies for the "carefully limited exception" of pretrial detention. *See id*. Mr. Pittman asks the Court to conduct a de novo review and enter an order releasing him with appropriate conditions.

**I.    Standard of review**

Section 3145(b) permits a defendant to file a motion for "revocation or amendment" of a detention order with the "court having original jurisdiction over the offense." When the defendant files a § 3145(b) motion, the district court "acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). The district court's review is as "unfettered as it would be if the district court were considering whether to amend its own action." *United States v. Wilson*, 996 F.2d 308 (5th Cir. 1993).

## II. The Bail Reform Act

The Bail Reform Act (BRA) generally requires a court to release a person charged with an offense. 18 U.S.C. § 3142(a). If the government seeks pretrial detention, it must meet two burdens. First, the government must meet its burden to obtain a detention hearing by showing that the case meets the qualifications set forth in 18 U.S.C. § 3142(f). Second, the government must meet its burden to obtain detention by showing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). To determine whether the government has met that burden, a court must consider several factors including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community." 18 U.S.C. § 3142(g).

## III. The BRA does not authorize a detention hearing.

The BRA "does not authorize a detention hearing whenever the government thinks detention would be desirable." *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). Instead, "[a] detention hearing can only be held in a case that involves a crime or circumstance set out in § 3142(f)." *Id.* at 110. That section authorizes a detention hearing in two circumstances: (1) when the case that involves certain crimes or when the defendant has committed certain crimes in his past, *see* § 3142(f)(1); and (2) when the case involves a "serious" risk that the defendant will "flee" or obstruct justice, *see* § 3142(f)(2).

The government has sought detention on two bases: (1) arson is a crime of violence under § 3142(f)(1); and (2) this case involves a serious risk that Mr. Pittman will threaten, injure, or

4

intimidate a prospective witness under § 3142(f)(2)(B). Neither ground authorizes a detention hearing.

    **A.**    **Arson is not a crime of violence.**

An offense under 18 U.S.C. § 844(i) is not a crime of violence for purposes of the BRA. The term "crime of violence" means:

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117.

18 U.S.C. § 3156(a)(4). Subsection (A) (referred to herein as the "elements clause") and subsection (B) (referred to herein as the "residual clause") are the only relevant sections in this case. The chapters enumerated in subsection (C) do not include arson.

To determine whether an offense qualifies as a crime of violence under the elements and residual clauses, this Court should apply a categorical approach. *See United States v. Singleton*, 182 F.3d 7, 11 (D.C. Cir. 1999); *United States v. Rogers*, 371 F.3d 1225, 1229 n.5 (10th Cir. 2004); *United States v. Dillard*, 214 F.3d 88, 92 (2d Cir. 2000). In *Singleton*, the D.C. Circuit concluded "from the plain meaning of § 3156 that a categorical approach is required." 182 F.3d at 11. The court based its conclusion on the term "element of the offense" in the elements clause, which made "clear that a court need look no further than the statute creating the offense to decide whether it describes a crime of violence." *Id*. Similarly, the residual clause's use of the word "nature" "refer[red] to a legal charge rather than its factual predicate." *Id.*

The categorical approach looks "only to the statutory definitions" of an offense, "not to the particular facts" of the offense. *See Taylor v. United States*, 495 U.S. 575, 600 (1990). It identifies the "'*least* serious conduct' criminalized by the statute." *United States v. Elkins*, 161 F.4th 899,

5

904 (5th Cir. 2025). If that conduct does not meet the definition of a crime of violence, then the offense is not a crime of violence. *See id.*

Using the categorical approach, arson does not qualify as a crime of violence under the elements clause. *See* § 3156(a)(4)(A). That clause requires that the offense have as an element the "use, attempted use, or threatened use of physical force *against the person or property of another*." *Id.* (emphasis added). An offense under 18 U.S.C. § 844(i) criminalizes a person's destruction of his or her own property. *See United States v. Mathews*, 37 F.4th 622, 626 (9th Cir. 2022); *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020); *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018); *United States v. Wilder*, 834 F. App'x 782, 784 (4th Cir. 2020). As a result, the offense does not qualify as a crime of violence under the elements clause.

Similarly, arson does not qualify as a crime of violence under the residual clause. To start, the Supreme Court held that language identical to the residual clause was void for vagueness in several contexts, including in the context of a civil removal proceeding. *See Sessions v. Dimaya*, 584 U.S. 148, 152 (2018) (holding that the residual clause is void for vagueness in the context of civil removal proceedings)*; United States v. Davis*, 588 U.S. 445, 448 (2019) (holding that the residual clause is void for vagueness in the context of 18 U.S.C. § 924(c)).

Even if this Court could rely on the residual clause, that clause does not cover arson for two reasons. First, like the elements clause, the residual clause defines a crime of violence as one that "involves a substantial risk that physical force *against the person or property of another* may be used." § 3156(a)(4)(B) (emphasis added). Because the arson statute criminalizes the destruction of one's own property, it does not qualify as a crime of violence under the residual clause. *See supra* at 6.

6

Second, arson lacks the requisite mens rea to qualify as a crime of violence under the residual clause. In *Borden v. United States*, 593 U.S. 420, 445 (2021), the Supreme Court held that "[o]ffenses with a mens rea of recklessness do not qualify as violent felonies under" the elements clause of ACCA. *Id*. The Court reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." *Id*. at 429.

The holding in *Borden* is equally applicable to the residual clause. The clause uses the language "against another" to modify the use of physical force. *See* 18 U.S.C. § 3156(a)(4)(B). This Court should therefore analyze whether arson, by its nature, involves a "substantial risk" of intentional physical force against the person or property of another.

Under this standard, arson does not qualify. An arson offense directed at one's own property might involve reckless or negligent force, such as when the fire spreads to other structures or harms firefighters or safety personnel. But these examples do not involve intentional force against the person or property of another.

Arson is not a crime of violence. The government is not entitled to a detention hearing under § 3142(f)(1).

**B.     This case does not involve a serious risk of witness intimidation.**

Section 3142(f)(2)(B) permits a detention hearing "in a case that involves … a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." In interpreting this provision, courts have held that the government must show that the defendant's *release* presents a risk of obstruction of justice or witness intimidation. It is not sufficient to show that the defendant has obstructed justice or threatened witnesses in the past. In *United States v. Madoff*, 586 F. Supp.

2d 240, 250 (S.D.N.Y. 2009), the court explained that "[t]he question is not simply whether [the defendant's] actions can be considered obstruction, but whether there is a serious risk of obstruction in the future. The statute, by its nature, is always looking forward." *See also United States v. Abrego*, 787 F. Supp. 3d 830, 858 (M.D. Tenn. 2025) ("The key question under § 3142(f)(2)(B) is whether the person will attempt to interfere with the integrity of a specific judicial proceeding, not the broader scope of the person's past conduct.").

Here, the government's evidence is insufficient for two reasons. First, the evidence focused exclusively on Mr. Pittman's past conduct. The government elicited testimony of past behaviors and offensive comments that unnerved Mr. Pittman's parents. But the government failed to connect that past behavior to any likelihood that Mr. Pittman would engage in witness intimidation in the future.

Second, the government produced no evidence of actual threats or violence. The government's evidence was devoid of any meaningful details about what Mr. Pittman said or did to make his parents uncomfortable. The evidence focused mostly on the feelings and reactions of Mr. Pittman's parents. That evidence falls short of establishing that Mr. Pittman's release involves a serious risk of witness intimidation.

Mr. Pittman objects to any detention hearing in this case because the government has not met its burden under § 3142(f).

**IV.     The BRA does not authorize detention.**

Even if this Court determines that the government has met its burden to obtain a detention hearing, the Court should order the defendant released on appropriate conditions. The government cannot meet its burden to show that the § 3142(g) factors warrant detention.

### A. The nature and circumstances of the offense weigh in favor of release.

Mr. Pittman is charged with arson in violation of § 844(i). The Court should consider two mitigating facts. First, the charged offense does not fall within any of the categories of serious offenses enumerated in § 3142(g)(1). Second, there is no allegation that a third party was injured during the arson, and the facts and circumstances suggest that the incident occurred at a time that would minimize any risk of injury. These facts weigh in favor of release.

### B. The weight of the evidence favors release.

The second (g) factor, concerning the weight of the evidence, is largely unknown at this point. Because the government does not produce discovery before detention hearings, the government's evidence is the view of one adversary without the other side having the benefit of a meaningful opportunity to respond.

Anyway, this Court should not place too much emphasis on the weight of the evidence because doing so is akin to applying a presumption of guilt, which is expressly forbidden under § 3142(j). Even if the Court chooses to consider the weight of the evidence supporting guilt, this should be treated as the "least important" of the § 3142(g) factors. *See United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (quotation omitted) ("We recognize that 'the weight of the evidence is the least important of the various factors.'").

### C. The history and characteristics of the defendant favor release.

Mr. Pittman's history and characteristics show that he can be safely released.

<u>Criminal history</u>: Mr. Pittman has no criminal history. He was not on probation, parole, or any other supervised release at the time of the alleged offense. These facts favor release. *See United States v. Campbell*, No. 1:25-CR-00040-(2), 2025 WL 2045626, at *3 (S.D. Ohio July 22, 2025) (finding that the lack of criminal history and the absence of supervision favored release).

<u>Incentive to flee</u>: Mr. Pittman has significant ties to the local community. He is a lifelong resident of the Jackson metropolitan area. He has family members in the

Jackson metropolitan area. He has no passport. These facts favor release. *See, e.g. United States v. Payne*, No. CR 2017-0031, 2018 WL 3546231, at *8 (D.V.I. July 23, 2018).

Financial resources: Mr. Pittman has limited financial resources, as evidenced by the appointment of the Federal Public Defender. This fact favors release. *See United States v. Khanna*, 703 F. Supp. 3d 1309, 1315 (N.D. Okla. 2023).

Physical condition: Mr. Pittman's current physical condition reduces the risk of any danger to the community and increases the risk of a serious or life-threatening condition from incarceration. This fact favors release. *See United States v. Moore*, No. 3:24-CR-97-KHJ-LGI-1, 2025 WL 1001345, at *4 (S.D. Miss. Apr. 3, 2025) (the defendant's "poor physical condition" favored release).

Educational history: Mr. Pittman graduated from a local high school and successfully completed three semesters of community college. His educational history demonstrates his capacity to comply with the conditions of release imposed by this Court.

### D.   There is insufficient evidence that the defendant's release poses a danger to the community.

In evaluating the risk of danger posed by the defendant's release, the Court must consider two important principles. First, the government faces a steep evidentiary burden. The government must prove any danger to the community by clear and convincing evidence. *See* § 3142(f)(2)(B) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."); *see also United States v. Khalaf*, 59 F.3d 1243 (5th Cir. 1995) ("An order of detention premised on the danger to others due to the accused's threats or attempts to threaten or intimidate potential witnesses must be supported by clear and convincing evidence.").

Second, the Court must evaluate the safety of the community in light of appropriate conditions of release. The Court may enter a detention order only if it finds that "no condition or combination of conditions will reasonably assure … the safety of any other person and the

10

community." § 3142(e). Even if the government can show some danger to the community, the government must also show that the danger cannot be mitigated by conditions on the defendant's release.

Given these principles, the government cannot meet its burden to justify detention. First, the government has not shown a risk of danger by clear and convincing evidence. With regard to the testimony of Mr. Pittman's parents, the government elicited only vague descriptions of offensive comments and posturing. The government has not shown that Mr. Pittman explicitly threatened or engaged in violence towards his parents.

And the Court should reject any attempt to rely exclusively on the nature of the underlying charge to secure detention. Had Congress intended a presumption in favor of detention for charges like arson, it would have so provided in the BRA.

The government's evidence is especially paltry in light of Mr. Pittman's lack of criminal history. Mr. Pittman has no prior convictions for any crimes, much less crimes involving assaultive conduct or the use of a firearm. These facts undermine any conclusion Mr. Pittman's release would endanger the community.

Even if the government could prove danger to the community, the Court can put in place conditions to reasonably assure the safety of other persons and the community. Importantly, in evaluating whether to release a defendant, this Court "cannot demand more than an 'objectively reasonable assurance of community safety.'" *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990). Requiring more—a guarantee of safety— "would fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention." *Id*.

With the proper standard in mind, there is no question that this Court can impose conditions of release that would reasonably assure the safety of the community. These conditions, including

home detention, electronic monitoring, and restrictions on witness contact, would mitigate any risk of future crimes or witness intimidation.

## CONCLUSION

The government has not met its burden to obtain a detention hearing. At the very least, this Court can craft conditions that will reasonably assure Mr. Pittman's appearance as directed and the safety of the community. We respectfully request his release.

Respectfully submitted, this the 3rd day of February, 2026.

**Omodare B. Jupiter**
Federal Public Defender

*Michael L. Scott*
**Michael L. Scott** (MB # 101320)
Assistant Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email:  mike_scott@fd.org

Attorney for Defendant

## CERTIFICATE OF SERVICE

    I, Michael L. Scott, certify that on February 3, 2026, this Motion was filed with the Clerk of the United States District Court for the Southern District of Mississippi, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

*Michael L. Scott*
**Michael L. Scott**
Attorney for Defendant
